## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 14 2019, 6:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan W. Rogers,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 14, 2019

Court of Appeals Case No.
18A-CR-3043

Appeal from the Tippecanoe
Superior Court

The Honorable Steven Meyer,
Judge

Trial Court Cause No.
79D02-1806-F3-19

**Tavitas, Judge.**

# Case Summary

Ryan W. Rogers appeals his sentence, received pursuant to his guilty plea, for aggravated battery, a Level 3 felony, and the use of a firearm sentencing enhancement. We affirm.

# Issue

Rogers raises one issue, which we restate as whether his sentence is inappropriate in light of the nature of his offense and his character.

# Facts

On May 30, 2018, D.T. received a text from her then-boyfriend, Rogers, whom she had allowed to move into her house. Rogers told D.T., through text messages, that he had made dinner and it would be ready for her once she arrived home. Rogers asked D.T. what time she would return home, and she told him that she would return around 7:00 p.m. Before D.T. arrived, Rogers unplugged the garage door opener. When D.T. arrived home, she attempted to open the garage door, but it would not work. Rogers was standing at the front door and held it open for D.T.

As D.T. walked inside her home, Rogers grabbed her arm, threw D.T.'s cellphone against the wall, and threw D.T. on the couch. Rogers placed a dinner plate on a table in front of the couch, and he placed a pistol with bullets next to the plate. Rogers began hitting D.T. on her back and told her to eat the food that he had prepared for her. Rogers told D.T. that she was going to die and that he was going to kill her. Rogers then grabbed the gun and discharged

two blank rounds near D.T.'s left ear. Rogers told D.T that the bullets that he shot next to her ear were only blanks. He also told her that it was not her time to die yet, but he would kill her later. Rogers then made D.T. watch the movie "Death Row." D.T. pleaded with Rogers for her life. D.T. told Rogers that she would give him money and drugs if he wanted. Rogers replied to D.T. that he did not want anything from her.

At one point, Rogers struck D.T. with the butt of his gun on the right side of her face near her eye. D.T. bled, and Rogers wiped D.T.'s blood off her face and wiped it on his own face. Rogers pointed his gun at D.T.'s temple and discharged five more blanks. Rogers continued to taunt D.T., and told her that he was going to kill her. Rogers then picked up a bullet with a pink tip that he claimed was a special bullet for D.T. When Rogers began to lose his balance due to his intoxication, D.T. fled to a neighbor's residence and hid there until the police arrived. Rogers searched for D.T. in the neighborhood, and he was eventually apprehended at D.T.'s house by a special response team. As a result of these events, D.T. suffered a ruptured ear drum, hearing loss, post-traumatic stress disorder, depression, and anxiety, and incurred $4,297.40 in medical bills.

On June 5, 2018, the State charged Rogers with: (1) aggravated battery, a Level 3 felony; (2) criminal confinement, a Level 3 felony; (3) domestic battery by means of a deadly weapon; a Level 5 felony; (4) intimidation, a Level 5 felony; (5) domestic battery resulting in moderate bodily injury, a Level 6 felony; (6) criminal recklessness, a Level 6 felony; and (7) domestic battery, a Class A misdemeanor. On September 14, 2018, the State also charged Rogers with use

of a firearm as a sentencing enhancement in relation to the offenses committed on May 30, 2018.

[7] On October 29, 2018, Rogers pleaded guilty pursuant to a plea agreement to aggravated battery, a Level 3 felony, and the use of a firearm sentencing enhancement. The remaining charges were dismissed.

[8] At sentencing, the trial court found the following aggravators: (1) Rogers' criminal history; (2) Rogers had unsuccessfully participated in a diversion agreement for a domestic battery against D.T. before committing the instant offense; (3) Rogers was on probation in a separate county when he committed the instant offense; (4) Rogers' character and attitude during the sentencing hearing, which showed a lack of remorse; (5) Rogers' violation of the no contact order when he attempted to directly and/or indirectly contact D.T.; and (6) that the harm, injury, loss, or damage suffered by D.T. was significant and greater than the elements necessary to prove the commission of the offense.

[9] The trial court also found the following mitigating factors: (1) Rogers' difficult childhood; (2) Rogers' mental health, substance abuse, and alcohol issues, which the trial court found diminished by his failure to complete the diversion program; and (3) Rogers' guilty plea. The trial court found that Rogers' guilty plea was diminished by the benefits Rogers received from the plea agreement.

[10] The trial court sentenced Rogers to fourteen years for his aggravated battery conviction to be served at the Department of Correction, with twelve years executed, and two years suspended on probation. The trial court imposed an

additional eight years for the use of a firearm sentencing enhancement with all eight years executed at the Department of Corrections. Rogers received an aggregate sentence of twenty-two years with two of the years suspended to probation.

## Analysis

[11]     Rogers asks that we review and revise his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Wilson v. State,* 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied*.

[12]     In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; the trial court's judgment receives "considerable deference." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. Ct. App. 2008)), *trans. denied.* In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be more appropriate; rather, the question is whether the sentence imposed is inappropriate." *Sanders*, 71 N.E.3d at 844 (citing *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)).

[13]     We look to the statutory range established for the classification of the offense. The sentence for a Level 3 felony ranges from three years to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5(b). Here, the trial court imposed a term of fourteen years, with a term of twelve years executed. The use of a firearm sentencing enhancement ranges from five years to twenty years, with no advisory sentence. I.C. § 35-50-2-11(g). The trial court imposed a term of eight years executed for the use of a firearm sentencing enhancement. In total, the trial court imposed an aggregate sentence of twenty-two years of which two years were suspended.

[14]     "[T]he advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Green v. State*, 65 N.E.3d 620, 637-38 (Ind. Ct. App. 2016), *trans. denied*. A deviation from the advisory sentence, when determining the appropriateness of a sentence, requires us to examine whether there is anything more or less egregious about the offense committed by Rogers that "makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011) (quoting *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*).

[15]     Pursuant to Indiana Appellate Rule 7(B), we first review the nature of Rogers' offense. As the trial court stated at Rogers' sentencing hearing:

> You threatened to kill the woman! The woman who took you
> into [her] home when you were homeless. You had nowhere else
> to go, and she took you in. And how do you treat her? You set

up her house, you lock the garage door, you disassemble the electric remote, and you set a trap for this woman.

* * * * *

You created this trap for her. You call her all nice or text her and say hey, you know, I've got dinner ready for you. She comes home thinking maybe you've turned the corner.

* * * * *

So, I don't think you can blame all this on alcohol where you just instinctively reacted. It's a horrific, horrific crime that you've committed here. You held her captive. You held her hostage. You tortured the poor woman saying this is it, I'm gonna [sic] kill you. Held the gun to her head. She had every reason to believe this is it. That she's watching her life go through, go past in her mind. And then you shoot a blank at her. Well wasn't that nice. Ha! Ha! Scared ya! Let's do it again. And again. And again. Every time, scaring the heck out of her, every time making her think she's gonna lose her life. It is horrific. And, it can't just be ignored by saying this is an immature twenty-one[-]year[-]old who was drunk and has some mental health issues. I don't buy it.

Conf. Tr. Vol. II pp. 56-58. Regardless of his assertion that he "was not in his right mind" because he was "under the influence of alcohol and methamphetamine[,]" the nature of Rogers' offense is horrific. Appellant's Br. pp. 9-10. Under the pretense of making dinner, Rogers lured D.T. home so that he could execute his plan of trapping and terrorizing her.

[16] As the trial court noted, Rogers disarmed the garage door to minimize D.T.'s options if she tried to escape. Rogers proceeded to torture D.T. once she came home by holding D.T. captive, telling D.T. that she was going to die, hitting her, and continuously shooting blank rounds next to her ear. During Rogers' sentencing, D.T. testified that she has a ruptured eardrum and suffers from anxiety, depression, and post-traumatic stress disorder as a result of Rogers' attack on her. D.T. also testified that she has recurring nightmares, that she had to get stitches on the right side of her face, and that she suffers from hearing loss. Additionally, D.T. testified that Rogers prompted someone to contact her on Facebook from prison. This person asked D.T. where she lived and stated that he could not believe that D.T. put Rogers in jail.

[17] Next, we consider Rogers' character. "When considering the character of the offender, one relevant fact is the defendant's criminal history." *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied.* Rogers' criminal history does not reflect well upon his character. His criminal history includes convictions for intimidation, leaving the scene of an accident, and operating a vehicle with a controlled substance in his body. As of the date of the presentence investigation report, Rogers had two petitions to revoke probation filed against him, as well a pending outstanding warrant. Rogers was on a diversion agreement for a prior battery against D.T. at the time of his offense. He was also on probation for his previous intimidation offense.

[18] The trial court observed Rogers' attitude and noted Rogers' lack of remorse as an aggravating factor. During Rogers' sentencing, D.T. testified that Rogers,

while in jail, convinced people to contact her. When Rogers addressed the court, he stated that "[D.T.] said someone contacted her from jail. That's a lie. I've never told anyone her name in the jail." Conf. Tr. p. 42.

[19] After Rogers addressed the trial court, the trial court remarked:

> Your character and attitude concerns the Court. I do think that you've displayed an attitude and character of violence, anger management. Also, your character and attitude indicated to me that you're not necessarily that remorseful. While you've been in jail for these last 182 days, you've done nothing to improve yourself. . . . Your character and attitude also concern me here today. This young woman who you victimized, who just talked about everything she went through and is still going through, and what do you do, you stand up and call her a liar! A liar! So, while you express remorse, I'm not sure you're completely remorseful with that kind of attitude.

*Id.* at 60-61. Rogers' actions during his sentencing do not reflect well upon his character. Rogers has not convinced us that his sentence is inappropriate in light of the nature of the offense and his character.

## Conclusion

[20] Rogers has failed to meet his burden of demonstrating that his sentence is inappropriate in light of the nature of his offenses and his character. We affirm.

[21] Affirmed.

Crone, J., and Bradford, J., concur.